IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRACY CARTER,                              )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )    1:20CV252
                                           )
KILOLO KIJAKAZI,                           )
Acting Commissioner of Social Security,    )
                                           )
                    Defendant.             )

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tracy Carter ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.      PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on September 1, 2017, alleging a disability onset date of June 15, 2017. (Tr. at 18, 154.)[1] Her claim was denied initially (Tr. at 154-70, 197-200), and that determination was upheld on reconsideration (Tr. at 171-89, 206-13). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 214-28.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent video hearing on September 25, 2019.

---

[1] Transcript citations refer to the Administrative Record [Doc. #13].

(Tr. at 18.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 28-29), and, on January 24, 2020, the Appeals Council denied Plaintiff's request for review of that decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

2

[ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 20.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> spine disorder; bilateral hip disorder; bilateral knee degenerative joint disease; bilateral shoulder disorder; plantar fasciitis; gastroesophageal reflux disease (GERD); colonic diverticulosis; irritable bowel syndrome (IBS); obesity; migraines; affective disorder; anxiety disorder; and posttraumatic stress disorder (PTSD)[.]

(Tr. at 20.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 21-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with the following, non-exertional limitations:

> (1) occasional climbing of ropes, scaffolds[,] or ladders; (2) occasional climbing of ramps or stairs; (3) occasional stooping, crouching, balancing, kneeling[,] or crawling; (4) no concentrated exposure to dangerous hazards such as unprotected heights or dangerous machinery; (5) frequent reaching; (6) limited to simple, routine, and repetitive tasks; (7) limited to occasional interaction with supervisors, co-workers, and the public; (8) [Plaintiff] can sustain concentration and persistence for periods of up to two hours at a time; and (9) limited to occasional changes in the work setting.

5

(Tr. at 23.) Based on this determination, the ALJ found at step four of the analysis that Plaintiff could not perform any of her past relevant work. (Tr. at 27.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 28.)

Plaintiff now contends that substantial evidence fails to support the ALJ's RFC assessment in two respects. First, Plaintiff argues that the ALJ failed to properly consider her Department of Veterans Affairs ("VA") disability rating in accordance with "binding case law in this circuit." (Pl.'s Br. [Doc. #18] at 5.) Second, Plaintiff claims that the RFC fails to adequately account for her moderate limitations in maintaining concentration, persistence, or pace. After a thorough review of the record, the Court finds that Plaintiff's first contention merits remand.

Plaintiff served in the United States Army from 1994 to 2015 as a logistics specialist. (Tr. at 127-130, 337.) Following her retirement from the Army, Plaintiff began a logistics job in the private sector, but she resigned less than two years later, citing her inability to take the required time off to attend her numerous VA medical appointments. (Tr. at 128, 148, 383.) Prior to Plaintiff's resignation, the VA found Plaintiff eligible for disability benefits based on the following conditions and ratings:

- Traumatic arthritis – 10%
- Limited motion of wrist – 10%
- Lumbrosacral or cervical strain – 10%
- Degenerative arthritis of the spine – 10%
- Limited flexion of thigh – 10%
- Thigh condition – 10%

6

- Limited flexion of knee – 10%
- Tinnitus – 10%
- Hiatal hernia – 10%
- Removal of uterus – 30%
- Migraine headaches – 30%
- Inflammation of ulnar nerve – 10%
- Major depressive disorder – 50%
- Limited motion of the jaw – 40%

(Tr. at 148, 522-24, 797-99.) Although the service-connected disability ratings for Plaintiff's impairments total well over 200%, VA disability ratings cannot exceed 100%. Therefore, the VA concluded that Plaintiff was 100% disabled throughout the time period at issue in the present case.

However, in considering Plaintiff's Title II claim, the ALJ declined to address or weigh the VA's disability ratings. The ALJ specifically noted that

> [i]ndications throughout the record concerning the claimant's "percentage" of disability and/or Service Connection are not medical opinions under the Social Security program rules. These are conclusory statements related to different standards of disability. As such, they are not inherently valuable of persuasive per 20 C.F.R. 404.1520b. The Social Security Administration ["SSA"] is not bound in any way by these determinations, and the ultimate issue of disability is reserved to the Commissioner. Nevertheless, to the extent that associated examinations reveal physical and/or mental work-related limitations, the undersigned has considered this evidence.

(Tr. at 27.)

The ALJ's treatment of the VA's decision reflects 2017 revisions to the Social Security regulations. The revised regulations specifically provide that "in claims filed on or after March 27, 2017, [the SSA] will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits," 20 C.F.R. § 404.1504;

7

82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15263-01 (Mar. 27, 2017). In conjunction with this change, the SSA also rescinded a related Social Security Ruling, SSR 06–03p. In rescinding this Ruling, the SSA noted that, as of March 27, 2017, "adjudicators will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive to us." 82 Fed. Reg. 15263-01.

The SSA's changes present an abrupt reversal of the agency's previous directives, which provided that "evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered," and that adjudicators must "explain the consideration given to [other] decisions in the notice of decision for hearing cases." <u>Titles II and XVI: Considering Opinions And Other Evidence From Sources Who Are Not "Acceptable Medical Sources" In Disability Claims; Considering Decisions On Disability By Other Governmental and Nongovernmental Agencies</u>, SSR 06-03p, 2006 WL 2329939, at *6, *7 (Aug. 9, 2006). Defendant now argues that the elimination of SSR 06-03p and the revisions to the regulations prior to the filing of Plaintiff's claim absolve the Commissioner of any responsibility to consider or discuss Plaintiff's 100% VA disability rating. However, as Plaintiff notes, directives to consider and discuss the disability determinations of other agencies are clearly in line not only with the SSA's broad, and still active, requirement to evaluate all evidence that may have a bearing on disability determination, but also with the well-developed case law of this Circuit, including <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983) (holding that an ALJ must consider as evidence the disability determination of another governmental agency), <u>Bird v. Comm'r of Soc. Sec. Admin.</u>, 699 F.3d 337, 343 (4th

8

Cir. 2012) (holding that a VA disability rating "is highly relevant to the disability determination" by the SSA and is ordinarily entitled to substantial weight), and Woods v. Berryhill, 888 F.3d 686, 692-93 (4th Cir. 2018) (extending Bird in holding that the ALJ must give "persuasive, specific, and valid reasons" in order to afford less than substantial weight to another agency's disability determination). The Fourth Circuit has not reconsidered these decisions since the SSA's 2017 revisions, and they therefore remain in full force, as further discussed below. See Wright v. Saul, No. 3:20-CV-00201-DSC, 2021 WL 1124784, at *2 (W.D.N.C. Mar. 24, 2021); Rose v. Saul, No. 7:19-CV-91-BO, 2020 WL 4740479, at *2-*4 (E.D.N.C. Aug. 14, 2020).

In Rose, the Eastern District of North Carolina specifically considered the issue of whether an ALJ was required to discuss a claimant's 100% VA disability rating for a claim filed after March 27, 2017. The ALJ in that case, as here, maintained that the new regulations superseded the Fourth Circuit's decision in Bird. The Eastern District of North Carolina, however, explained at length that

> [t]he new rules did not supersede the Fourth Circuit's decision in Bird, and the ALJ committed reversible error by failing to afford substantial weight to Mr. Rose's 100% VA rating. The ALJ's assumption that the new SSA regulations supplanted Fourth Circuit case law rests on a fundamental misunderstanding of Bird and the cases that preceded it. Bird did not interpret a prior regulation, alterable by SSA. Rather, Bird followed a line of cases expounding on what is required from the ALJ to enable the Court to conduct its review.
>
> Bird began its analysis by invoking DeLoatche, 715 F.2d at 150, which explained that the judicial task under § 405(g) was impossible without sufficient findings and explanations from the ALJ. 699 F.3d at 343. An ALJ decision that overlooked an agency disability determination failed in this respect. DeLoatche, 715 F.2d at 150. The court then surveyed the widespread agreement between the courts of appeals—as well as within SSA itself—that VA ratings must be considered by ALJs. Bird, 699 F.3d at 343 (citing McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir.

9

1985); Cutler v. Weinberger, 516 F.2d 1282, 1286 (2d Cir. 1975); and SSR No. 06–03p). After reviewing the overwhelming agreement on the issue, the Court arrived at the heart of its analysis. It reasoned:

> The VA rating decision reached in Bird's case resulted from an evaluation of the same condition and the same underlying evidence that was relevant to the decision facing the SSA. Like the VA, the SSA was required to undertake a comprehensive evaluation of Bird's medical condition. Because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency. Thus, we hold that, in making a disability determination, the SSA must give substantial weight to a VA disability rating.

Id. This holding was unaffected by SSA's new rules. An ALJ who fails to address a VA disability rating leaves a gap in his or her decision, rendering judicial review impossible. Nowhere is this hole more glaring than in a case like this, where the VA determined that Mr. Rose was 100% disabled. To be sure, VA and SSA employ different technical rules for arriving at their respective determinations. But it stretches the imagination to believe that the difference in methodology accounts for the gap between the VA's 100% disability rating and SSA's finding of not disabled. An ALJ decision that fails to address such a logical gap fails to provide the requisite findings and explanations to enable judicial review.

The Court's reading of Bird is buttressed by Woods v. Berryhill, where the Fourth Circuit explained that, in order to afford less than substantial weight to another governmental agency's disability determination, the ALJ must give "persuasive, specific, valid reasons." 888 F.3d 686, 692 (4th Cir. 2018). Without such explanation, according to Woods, a court "cannot engage in a meaningful review." Id. at 692-93. Moreover, Woods rejected the Commissioner's argument that the ALJ can escape discussing the other agency's disability decision by merely considering the evidence underlying that decision. Id. at 693-94. The court wrote: "[i]t may well be that the ALJ considered this evidence in deciding both which doctors and evidence to credit and whether the [other agency's] decision deserved substantial weight. But meaningful review cannot rest on such guesswork." Id. By rejecting this argument, the court necessarily rejected the new SSA regulations' approach. It is not enough that the ALJ purport to engage with the medical evidence on which the other agency's decision relied. The decision itself must be discussed, afforded substantial weight, or else qualified with specific reasons.

10

> In this case, the VA determined that Mr. Rose was 100% disabled. The ALJ, on the other hand, determined that Mr. Rose was not disabled. Two government agencies performing similar assessments reached polar opposite conclusions, leaving a glaring hole in the record and preventing judicial review. Bird remedies this problem, and SSA's new regulations did not overrule Bird. By failing to address Mr. Rose's 100% VA disability rating, the ALJ erred.

Rose, 2020 WL 4740479, at *3-4. The Western District of North Carolina has adopted this analysis in at least two cases in that district. See Wright, 2021 WL 1124784; Van Cleave v. Saul, 1:20-CV-144-DSC, 2021 WL 2078004 (W.D.N.C. May 24, 2021).[4]

The same rationale applies in the present case, where, as in Rose, the ALJ summarily discounted Plaintiff's 100% VA disability rating as "not inherently valuable or persuasive." (Tr. at 27.) Moreover, the ALJ's consideration of the VA's "associated examinations" does nothing to remedy the ALJ's error. (Tr. at 27.) As set out above, an adjudicator must do more than "purport to engage with the medical evidence on which the other agency's decision relied." Rose, 2020 WL 4740479, at *3; see also Woods, 888 F.3d at 693-94. "Indeed, Woods makes clear that without consideration of a VA decision, judicial review is simply not possible." Rose, 2020 WL 4740479, at *3 n.2. Accordingly, the Court concludes that substantial evidence fails to support the ALJ's RFC assessment in this case. In light of the recommended remand, the Court need not address the additional issue raised by Plaintiff.

---

[4] Defendant notes that the District Court of South Carolina has not adopted this approach. (Def. Br. at 13 (citing Johnson v. Saul, 6:19CV1155, 2020 WL 6265092 (D.S.C. June 3, 2020), and Pirolo v. Saul, 5:19CV2881, 2021 WL 389250 (D.S.C. Feb. 4, 2021).) However, both the Eastern and Western Districts of North Carolina have considered this issue at length and have entered reasoned opinions ultimately adopting the analysis set out above. The Commissioner has elected not to appeal those decisions, which means that the Fourth Circuit has not been given the opportunity to address whether Bird, Woods, and DeLoatche have been overruled or are no longer applicable. Therefore, the undersigned will follow the reasoning of the other federal district courts in North Carolina set out above.

Case 1:20-cv-00252-WO-JEP   Document 24   Filed 09/01/21   Page 11 of 12

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). Defendant's Motion for Judgment on the Pleadings [Doc. #21] should be DENIED, and Plaintiff's Motion for Summary Judgment [Doc. #18] should be GRANTED to the extent set out herein.

This, the 1st day of September, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge